IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

| | |
|---|---|
| ARMORSOURCE, LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>THE UNITED STATES,<br><br>        Defendant. | Case No. __20-993 C__<br><br>Judge _____ |

## COMPLAINT

Plaintiff, ArmorSource, LLC, respectfully brings this pre-award bid protest and alleges as follows:

## NATURE OF THE CASE

1. This pre-award bid protest challenges Defense Logistics Agency (DLA) Solicitation No. SPE1C1-19-R-0163 (Solicitation), which seeks to procure second-generation advanced combat helmets for use by the U.S. Army.

2. DLA's inclusion of a clause in the Solicitation requiring offerors to manufacture the second-generation advanced combat helmets using "mandatory source" retention systems from National Industries for the Blind is arbitrary, capricious, an abuse of discretion, and contrary to law because the clause unduly restricts competition in violation of the Competition in Contracting Act (CICA). *See* Ex. 1, Solicitation, at A29; Ex. 2, Purchase Description, at A136.[1]

---

[1] "A__" refers to pages of the appendix attached to this complaint.

3. National Industries for the Blind is one of two central non-profit agencies under the federal government's AbilityOne Program, which was established under the Javits-Wagner O'Day Act (JWOD Act), 41 U.S.C. §§ 8501-8506.

4. The JWOD Act requires federal agencies to purchase "suitable" commodities and services from qualified non-profit agencies (NPA) that employ a certain percentage of blind or severely disabled individuals. *See* 41 U.S.C. §§ 8501-8506; 41 C.F.R. § 51-2.4.

5. Under the JWOD Act, Congress established the Committee for Purchase from People who are Blind or Severely Disabled, which is commonly referred to as the AbilityOne Commission.

6. Among other things, the AbilityOne Commission determines whether a commodity or service is "suitable" for federal agencies to purchase from qualified NPAs. *See* 41 U.S.C. §§ 8502-03; 41 C.F.R. § 51-2.4.

7. The AbilityOne Commission considers four factors when determining whether a commodity or service is suitable for purchase from an NPA: (1) employment potential for blind and severely disabled individuals; (2) NPA qualifications; (3) NPA capability to meet the government's quality standards and delivery schedules with a blind or severely disabled workforce; and (4) impact on the current contractor. *See* 41 C.F.R. § 51-2.4.

8. If the AbilityOne Commission determines that a commodity or service is suitable for purchase from a qualified NPA, the Commission adds that item to its "Procurement List." *See* 41 U.S.C. § 8503(a); 41 C.F.R. § 51-2.5.

9. The Procurement List identifies the suitable commodities and services that federal agencies must purchase from qualified NPAs. *See* 41 U.S.C. § 8503(a); 41 C.F.R. §§ 51-2.8; 51-1.2(a); 51-1.3.

10. Once the AbilityOne Commission adds a commodity or service to the Procurement List, non-NPA commercial entities can no longer sell that commodity or service directly to the government. *See* 41 U.S.C. §§ 8503(a); 8504; 41 C.F.R. §§ 51-1.2(a); 51-1.3; 51-2.8.

11. Importantly, the AbilityOne Commission must follow a formal regulatory process before adding a commodity or service to the Procurement List.

12. First, the AbilityOne Commission must publish a notice in the Federal Register proposing to add the commodity or service to the Procurement List:

> At least 30 days prior to the Committee's consideration of the addition or deletion of a commodity or service to or from the Procurement List, the Committee publishes a notice in the Federal Register announcing the proposed addition or deletion and providing interested persons an opportunity to submit written data or comments on the proposal.

41 C.F.R. § 51-2.3.

13. Second, if the AbilityOne Commission decides to add the commodity or service to the Procurement List, the AbilityOne Commission must publish a final rule in the Federal Register:

> The Committee considers the particular facts and circumstances in each case in determining if a commodity or service is suitable for addition to the Procurement List. When the Committee determines that a proposed addition is likely to have a severe adverse impact on a current contractor, it takes this fact into consideration in deciding not to add the commodity or service to the Procurement List, or to add only a portion of the Government requirement for the item. If the Committee decides to add a commodity or service in whole or in part to the Procurement List, that decision is announced in the Federal Register with a notice that includes information on the effective date of the addition.

41 C.F.R. § 51-2.5.

14. Here, the AbilityOne Commission has not published a proposed or final rule in the Federal Register adding the purported mandatory source retention systems to the Procurement List.

15. Therefore, these retention systems are not properly listed on the Procurement List, and the Solicitation unduly restricts competition by requiring offerors to obtain them from a mandatory source without complying with any exception to CICA's full-and-open competition requirements.[2]

16. Further, even if the AbilityOne Commission had properly added the retention systems to the Procurement List (it did not), the AbilityOne Program's mandatory source requirement applies to the government's acquisition of commodities, not a commercial manufacturer's purchase of component parts for use in the production of an end-item like the advanced combat helmet.

## JURISDICTION

17. This Court possesses jurisdiction under 28 U.S.C. § 1491(b)(1). ArmorSource is an interested party objecting to the terms of the Solicitation.

## PARTIES

18. ArmorSource is a small business manufacturer. Its principle place of business is 3600 Hebron Road, Hebron, Ohio 43025.

19. Defendant is the United States, acting through DLA.

## FACTUAL BACKGROUND

20. DLA issued the Solicitation on February 12, 2020. Since then, DLA has issued 18 Solicitation modifications. *See* Ex. 1, Solicitation, at A1-76.

21. The Solicitation included several attachments, including the Purchase Description attached to this complaint as Exhibit 2. *See* A77-169.

22. The Purchase Description includes, among other things, manufacturing requirements for the second-generation advanced combat helmets sought by DLA under the Solicitation.

---

[2] Although the Solicitation cites no authority for the mandatory source determination, it does include 48 C.F.R. § 52.208.9, "Contractor Use of Mandatory Sources of Supply." Ex. 1, at A38.

23. Section 6.12 of the Purchase Description provides as follows: "The mandatory source for the Suspension Systems/Retention Systems is National Industries for the Blind, 1310 Braddock Place, Alexandria, VA  22314." Ex. 2 at A136.

24. Although the Purchase Description identifies National Industries for the Blind as the mandatory source, DLA has indicated to ArmorSource that the retention systems must be purchased from San Antonio Lighthouse for the Blind (SALB), an NPA associated with National Industries for the Blind under the AbilityOne Program.  *See* Ex. 3, July 16, 2020, Email Chain, at A170-71 Ex. 4, July 30, 2020, Email Chain, at A172-75.

25. The Solicitation identifies the mandatory source retention systems by the following National Stock Numbers (NSN):

| | |
|---|---|
| Small/Medium (SM/MD) IHPS RS | 8470-01-672-0777 |
| Large/Extra Large (LG/XL) IHPS RS | 8470-01-672-0796 |
| Left Handed SM/MD IHPS RS | 8470-01-672-0741 |
| Left Handed LG/XL IHPS RS | 8470-01-672-2260 |
| Right Handed SM/MD H-Back IHPS RS | 8470-01-672-0763 |
| Right Handed LG/XL H-Back IHPS RS | 8470-01-672-2292 |
| Left Handed SM/MD H-Back IHPS RS | 8470-01-672-2305 |
| Left Handed LG/XL H-Back IHPS RS | 8470-01-672-0705 |

Ex. 2, at A136.

26. The Solicitation requires offerors to submit proposals by August 11, 2020.

27. Among other things, the Solicitation requires that proposals include samples of 198 finished helmets and 4 unfished helmets.  Ex. 1, at A65.

28. The Solicitation refers to these samples as Product Demonstration Models or PDMs.  *Id*.

29. The Solicitation requires offerors to manufacture the PDM sample helmets – and the helmets that will be manufactured by the awardee – with the purportedly mandatory source retention systems   *See* Ex. 1, at A29; 38; 65; Ex. 2, at A136.

30. DLA confirmed this requirement in correspondence with ArmorSource. *See* Ex. 3-4, at A170-75

31. Upon information and belief, the purported mandatory source retention systems were initially designed, produced, or otherwise sold by Ceradyne, Inc., a subsidiary of 3M.

32. Upon information and belief, Ceradyne and/or 3M have entered into a business arrangement with National Industries for the Blind and/or SALB that relates to the production, distribution, and/or sales of the mandatory source retention systems identified in the Solicitation.

33. Ceradyne/3M is expected to submit a proposal in response to the Solicitation.

34. Since March 2020, ArmorSource has been trying to obtain the required retention systems from SALB because DLA has confirmed that SALB is the mandatory source. *See* Ex. 3-4, at A170-75.

35. To date, SALB has refused to sell or otherwise provide ArmorSource with the required retention systems. Upon information and belief, SALB has not refused to sell or otherwise provide the required retention systems to 3M/Ceradyne.

36. Given that the Solicitation mandates the use of the SALB retention systems, SALB's refusal to provide ArmorSource with the retention systems prevents ArmorSource from submitting its proposal in response to the Solicitation.

37. In other words, SALB, which appears to have a business relationship with a prospective offeror (3M/Ceradyne), is effectively barring ArmorSource from competing for the contract.

38. The relationship between SALB and 3M/Ceradyne raises fundamental questions about the fairness of the acquisition process at issue in this protest.

39. Moreover, the inability of ArmorSource – and perhaps other offerors – to obtain the mandatory source retention systems calls into question DLA's ability to achieve the full-and-open competition required under CICA.

40. On July 15, 2020, ArmorSource asked DLA to extend the proposal deadline and provide interested offerors like ArmorSource with alternative methods for obtaining the retention systems. *See* Ex. 3, at A170-71.

41. DLA denied ArmorSource's request on July 16, 2020. *Id.*

42. On July 27, 2020, ArmorSource again raised the mandatory source issue with DLA, asking for a 60-day extension of the proposal deadline. *See* Ex. 4, at A173-75.

43. DLA denied this request on July 30, 2020. *Id.* at A172.

## COUNT I
### (Violations of CICA and the JWOD Act)

44. ArmorSource realleges and incorporates by reference all of the allegations in paragraphs 1-43 as if fully set forth herein.

45. The JWOD Act's mandatory source requirements only apply to commodities and services properly included on the AbilityOne Commission's Procurement List.

46. Here, the AbilityOne Commission did not properly add the identified "mandatory source" retention systems to the Procurement List.

47. First, the AbilityOne Commission has not determined that the retention systems are commodities that are "suitable" for addition to the Procurement List. *See* 41 C.F.R. § 51-2.4.

48. Second, the AbilityOne Commission has not complied with the notice-and-comment rulemaking requirements for adding the retention systems to the Procurement List through the Federal Register. *See* 41 C.F.R. §§ 51-2.3; 51-2.5; 51-2.8(d); *see also* 41 U.S.C. § 8503(a)(2)

(providing that the AbilityOne Commission must comply with the Administrative Procedure Act when adding items to the Procurement List).

49. Accordingly, DLA's "mandatory source" requirement is arbitrary, capricious, an abuse of discretion, and contrary to law because it unduly restricts competition in violation of CICA and the JWOD Act.

## COUNT II
### (Violations of CICA and the JWOD Act)

50. ArmorSource realleges and incorporates by reference all of the allegations in paragraphs 1-49 as if fully set forth herein.

51. Even if the AbilityOne Commission had properly added the retention systems identified in the Solicitation to the Procurement List (it did not), the JWOD Act does not allow DLA to require manufacturers like ArmorSource to obtain component parts like the retention systems from NPAs.

52. Rather, the JWOD Act's mandatory source requirements only apply when the government seeks to acquire commodity end-items and services that are listed on the Procurement List.

53. Specifically, 41 C.F.R. § 51-1.2(a) provides as follows:

> The JWOD Act mandates that commodities or services on the Procurement List required by Government entities be procured, as prescribed in this regulation, from a nonprofit agency employing persons who are blind or have other severe disabilities, at a price established by the Committee, if that commodity or service is available within the normal period required by that Government entity.

54. The AbilityOne regulations further provide that "[t]he Committee maintains a Procurement List which includes the commodities and services which shall be procured by Government departments and agencies under the JWOD Act from the nonprofit agency(ies) designated by the Committee." 41 C.F.R. § 51-2.8(a).

55. In addition, the AbilityOne regulations define the Procurement List as "a list of commodities (including military resale commodities) and services which the Committee has

determined to be suitable to be furnished to the Government by nonprofit agencies for the blind or nonprofit agencies employing persons with severe disabilities pursuant to the JWOD Act and these regulations." 41 C.F.R. § 51-1.3.

56. Here, the mandatory source retention systems are not commodity items being purchased by the government; they are components of the end-item helmets being procured by DLA.

57. Accordingly, DLA's inclusion of the mandatory source requirement is arbitrary, capricious, an abuse of discretion, and contrary to law because it unduly restricts competition in violation of CICA and the JWOD Act.

## COUNT III
**(Violations of the JWOD Act and the Federal Acquisition Regulation (FAR))**

58. ArmorSource realleges and incorporates by reference all of the allegations in paragraphs 1-57 as if fully set forth herein.

59. In the alternative to Counts I and II, even if DLA had properly relied on the JWOD Act's mandatory source provisions (it did not), DLA violated the JWOD Act and the FAR by not providing ArmorSource with a purchase exception based on SALB's refusal to provide ArmorSource with the retention systems.

60. Under 41 C.F.R. § 51-5.4, ArmorSource is entitled to a purchase exception from the JWOD Act's mandatory source requirements because SALB could not or would not provide the retention systems to ArmorSource within the Solicitation's required timeframe.

61. 48 C.F.R. § 52.208-9, which DLA incorporated into the Solicitation, required DLA to work with ArmorSource to obtain this purchase exception.

62. ArmorSource sought an exception from the mandatory source requirement in correspondence with DLA. *See* Ex. 3-4, at A170-175.

63. The government's failure to provide the necessary purchase exception violated 41 C.F.R. § 51-5.4 and 48 C.F.R. § 52.208-9.

64. In addition, the government's failure to provide the purchase exception further restricted competition unnecessarily.

## PRAYER FOR RELIEF

WHEREFORE, ArmorSource respectfully requests that the Court grant the following relief:

(a) Declare DLA's inclusion of the mandatory source requirement arbitrary, capricious, an abuse of discretion, and contrary to law;

(b) Declare that DLA violated the AbilityOne and FAR purchase exception regulations;

(c) Enjoin DLA from awarding a contract under the Solicitation as drafted;

(d) Direct DLA to amend the Solicitation to prevent the government from unlawfully restricting competition;

(e) Award available attorneys' fees and costs to ArmorSource; and

(f) Award such other and further relief as the Court deems just and proper.

Respectfully submitted,

s/ Joshua D. Schnell
JOSHUA D. SCHNELL*
Daniel J. Strouse
Rhina M. Cardenal^
Cordatis LLP
1011 Arlington Boulevard
Suite 375
Arlington, VA 22209
Telephone: (202) 342-2550
Facsimile: (202) 342-6147
Email: jschnell@cordatislaw.com

*Attorney of Record for Plaintiff*

^ *Application for Admission to the U.S. Court of Federal Claims Forthcoming*

Dated: August 9, 2020